UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRADLEY T. GOULDING, SANDRA
M. GOULDING, WILLIS L. GOULDING                          Civil No. 04-1058-HA
and DARLENE T. GOULDING,

              Plaintiffs,                                OPINION AND ORDER

    v.

PACIFIC COAST INVESTMENT
COMPANY, as investment manager
for its investors: Ann Marie Brown, et al.,

              Defendants.

_____

HAGGERTY, Chief Judge:

       On June 4, 2004, plaintiffs Bradley T. Goulding, Sandra M. Goulding, Willis L.

Goulding, and Darlene T. Goulding (plaintiffs) filed a Petition for Declaratory Judgment against

1 - OPINION AND ORDER

Pacific Coast Investment Company (defendants) in the Circuit Court of the State of Oregon for Multnomah County, seeking a declaration that they had satisfied and discharged a stipulated judgment previously entered into between the parties.  On August 2, 2004, defendants removed the case to this court pursuant to 28 U.S.C. 1332.

On June 3, 2005, this court issued an Order granting in part and denying in part plaintiffs' Motion to Amend Complaint.  On August 2, 2005 plaintiffs filed an Amended Complaint changing the suit from a declaratory judgment to a breach of contract action.  On August 18, 2005 defendants filed a Motion for Summary Judgment [21].  On September 14, 2005 defendants also filed a Motion to Strike the declarations of Bradley T. Goulding and Margaret Page [32].  Oral argument on these motions was heard on February 27, 2006.

For the following reasons, Defendants' Motion for Summary Judgment [21] is GRANTED as to the Section 17 "Confidentiality Provision" breach claim and the Section 3 "Interest-Bearing Escrow Account" breach claim.  Defendants' Motion for Summary Judgment as to all other claims is DENIED.  Likewise, Defendants' Motion to Strike the declarations of Bradley T. Goulding and Margaret Page [32] is DENIED.

**FACTUAL BACKGROUND**

      1.      **<u>The Settlement Agreement</u>.**

On or about December 3, 1999, the plaintiffs and defendants entered into a Settlement Agreement and First Addendum to Settlement Agreement (Agreement).  The Agreement stemmed from defendants initiating foreclosures on condominiums that secured a debt owed by plaintiffs to defendants.  Two of the condominiums securing plaintiffs' debt to defendants,

identified in the Agreement as the "96382 Collateral,"[1] were non-judicially foreclosed by defendants prior to entry into the Agreement. Pursuant to the Agreement, plaintiffs conveyed to defendants the seven remaining condominiums that secured the debt owed by plaintiffs to defendants, which are identified in the Agreement as the "96381 Collateral."[2] Under the Agreement, the plaintiffs also stipulated to an entry of Judgment against them in the amount of $386,400.00 (Judgment).

**2.    The Price Listing and Notice Provisions.**

Pursuant to Section 2 of the Agreement, the seven condominium units constituting the 96381 Units were listed for sale by defendants. Pursuant to Sections 6 and 8 of the Agreement, defendants were obligated to apply the net proceeds from the condominium sales against the balance owed by plaintiffs on the Judgment. Section 2 of the Agreement provides that defendants could lower the listing prices of the 96381 Units based on time periods specified in Section 2 (a)-(d) of the Agreement.

Section 2 (a) provides that if the units did not sell within ninety days at the "Initial Listing Price," then defendants could reduce the listing prices from the "Initial Listing Price" to the "90-Day Listing Price." Section 2 (b) provides that if the units did not sell within 180 days, then defendants could reduce the listing prices from the "90-Day Listing Price" to the "180-Day Listing Price." Section 2 (c) provides that if the units did not sell within 270 days, then defendants could reduce the listing prices to the "270-Day Listing Price." The Agreement further provides in Section 2 (d) that if the units did not sell after one year of the Agreement's

---

[1] The court will refer to these two condominiums as the "96382 Units."

[2] The court will refer to these seven condominiums as the "96381 Units."

3 - OPINION AND ORDER

creation date, defendants "may reduce the listing price to any amount in its unfettered discretion. Provided, however, that defendants must send [plaintiffs] written notice of the reduced listing price."

Defendants did not reduce the 96381 Units' listing prices below the 270-day listing price as set forth in Exhibit C to the Agreement. Plaintiffs did not receive written notice of any reduction in the 96381 Units' original listing price subsequent to the one year anniversary of the Agreement.

### 3.    The Furniture Selling Provision.

Pursuant to Section 13 of the Agreement, the two condominium units that constituted the 96382 Units were listed for sale by defendants. Section 11 of the Agreement as amended further provides that if the furniture in those units was sold with the 96382 Units, the defendants would apply $7,500 to the Judgment for the furniture in each of the two 96382 Units. The total that could be credited to the Judgment was $15,000.00.

In August 2002, defendants found buyers for the 96382 Units who also desired to purchase the furnishings therein. On or about August 26, 2002, plaintiff Bradley T. Goulding sent defendants' broker a letter with additional conditions under which plaintiffs would sell the furnishings in the 96382 Units directly to the buyers. Plaintiffs' conditions required that the proceeds of $15,000.00 be paid from escrow directly to Mr. Goulding and that the buyers enter into a rental contract for the 96382 Units with plaintiffs' company, Neskowin Vacation Rentals Incorporated. The buyers ultimately purchased the 96382 Units without the furnishings.

4.    **The Confidentiality Agreement**.

Paragraph 17 of the Agreement contained a confidentiality provision stating that "[defendants] and its agents were restrained from voluntarily providing any information to any person, company, or agency regarding account no. 96381 or account no. 96382, except as required by law."  On or about March 3, 2002, defendants' asset manager, Melody Westerdahl, announced at the annual meeting of the Neskowin Homeowners Association that the units in question had been taken back in foreclosure.  Defendants did not obtain the 96381 units via foreclosures.  Rather, the units were deeded back to defendants by Bargain and Sale Deed.

**STANDARDS**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The opponent must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the

existence of that element of the case or be subject to summary judgment.  *Id.* at 322.  Such an

issue of fact is only a genuine issue if it can reasonably be resolved in favor of either party.

*Anderson*, 477 U.S. at 250-51.  This burden to demonstrate a genuine issue of fact increases

where the factual context makes the non-moving party's claim implausible.  *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Mere disagreement or the bald assertion that a genuine issue of material fact exists does

not preclude summary judgment.  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics,*

*Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  In other words, "[w]hen the moving party has carried

its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50 (citations omitted).

Special rules of construction apply when evaluating summary judgment motions: 1) all

reasonable doubts as to the existence of genuine issues of material fact should be resolved

against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed

in the light most favorable to the nonmoving party; and 3) the court must assume the truth of

direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by

the moving party.  *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987).

When different ultimate inferences can be reached, summary judgment is not appropriate.

*Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

The issue of material fact required by Rule 56 to allow a party to proceed to trial need not

be resolved conclusively in favor of the party asserting its existence; all that is required is

sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve

the parties' differing versions of the truth at trial.  *Id.*  At this stage of the litigation, the judge

does not weigh conflicting evidence or make credibility determinations.  These determinations

are the province of the fact finder at trial.  *Id., see also Abdul-Jabbar v. General Motors Corp.*,

85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not to weigh

the evidence or determine the truth of the matter, but only determine whether there is a genuine

issue for trial).

**DISCUSSION**

      1.     **<u>Plaintiffs' Breach of Contract Claims</u>.**

      Plaintiffs advance four arguments in support of their breach of the settlement agreement

claim.  The first two arguments in support of the breach claim raise contract interpretation

questions.

      A.     **<u>The Notice Provision Under Section 2 of the Agreement is Ambiguous</u>.**

      In relevant part, Sections 2(a)-(d) of the Agreement provide:

      a.     PCIC may review the initial listing price 90 days after the initial listing and may in its unfettered discretion reduce the listing price by up to 10% of the amount shown in Exhibit C.

      b.     After 180 days, PCIC may review the listing price and in its unfettered discretion may further reduce the listing price by up to 15% of the amount shown in Exhibit C.

      c.     After 270 days, PCIC may review the listing price and in its unfettered discretion may further reduce the listing price by up to 20% of the amount shown in Exhibit C.

      d.     After one year, PCIC may reduce the listing price to any amount in its unfettered

7 - OPINION AND ORDER

discretion.  Provided, however, that PCIC must send the Gouldings written notice of the reduced listing price.  Within 10 days of mailing such notice Gouldings (or any of them) may elect by notice in writing to PCIC to purchase one or more of the units for the amount of the reduced listing price, and must pay such price in cash within 30 days of election.

Plaintiffs argue that defendants were required to provide written notice, after the one year anniversary of the Agreement, as to the status of the listing price on each of the seven condominium units at issue.  Plaintiffs further contend that defendants were obligated to give notice as to the listing price for each condominium unit, if that price dropped below the original listing price.  Additionally, plaintiffs argue that after one year, defendants were obligated to provide notice of any reduced listing price so that plaintiffs would have ten days from the receipt of such notice to elect to purchase one or more of the units at the amount of the reduced listing price.

Defendants argue that no contractual obligation to provide notice of a reduced listing price for the units existed under Section 2(d), unless the reduced listing prices were below the 270-Day listing prices[3] allowed under Section 2(c).  Defendants contend that because the reduced listing prices never dropped below the 270-Day listing prices, no notice was required under Section 2(d) and, thus, no breach of the provision occurred.

After reviewing Sections 2(a)-(d), the court finds that the notice provision is ambiguous. The questioned provisions could support either parties' suggested constructions regarding when notice was required.  Moreover, the existence of Section 2(d) indicates that the parties did intend to create a mechanism by which the Gouldings could reacquire the property if such property had not sold after one year of the Agreement.  The circumstances under which such notice became

---

[3] Below 20 percent of the original listing price.

contractually required, however, cannot be discerned from a plain reading of the provisions at issue.

Accordingly, the court finds that a genuine issue of material fact exists with regard to when the parties intended notice to be provided under Section 2(a)-(d) and that summary judgment is improper.  Based on the parties' summary judgment submissions and the arguments proffered during oral argument, however, this court notes that questions may exist regarding the issue of identifying actual damages.  Such questions will have to be addressed thoroughly  in order for plaintiffs to prevail at trial on their Section 2(a)-(d) breach claim.

### B.      **Establishment of an Interest Bearing Escrow Account.**

In relevant part, Section 3 of the Agreement provides:

Upon the sale of each unit, PCIC agrees to allocate 1percent of the purchase price of each sale to [plaintiffs] if the condominium unit is sold with the furnishings.  Such sum shall be held in escrow until the earlier of the sale of all the 96381 Collateral and the 96382 Property, or full payment of the judgment mentioned below.

Plaintiffs argue that Section 3 of the Agreement required defendants to create an "interest bearing" escrow account and place one percent of the proceeds from the sale of the 96381 Units into that account, which would later be applied to the balance of the Judgment owed by plaintiffs.  Plaintiffs contend that defendants' failure to establish an "interest bearing" escrow account breaches the Agreement.

Defendants argue that Section 3 of the Agreement does not state that defendants were required to establish an "interest bearing" escrow account.  Rather, Section 3 only required defendants to establish a "non-interest bearing" escrow account based on the plain language of the provision.

The court finds that, when read as a whole, Section 3 of the Agreement did not

9 - OPINION AND ORDER

contemplate establishing an "interest bearing" escrow account.  Section 3 expressly states that one percent of the proceeds from the sale of the 96381 collateral and the 96382 property shall be held in an "escrow account."  The provision does not state that an "interest bearing" escrow account shall be created.  Absent specific contractual provisions to the contrary, plaintiffs cannot establish damages under Section 3 because the provision did not entitle plaintiffs to the receipt of interest.  Accordingly, the court finds that no genuine issue of material fact exists as to the Section 3 breach claim and that summary judgment for defendants is proper.

### C.    Alleged Interference with Plaintiff's Economic Opportunity.

Plaintiffs argue that defendants breached Section 11 of the Agreement.  Section 11 dealt with the sale of furnishings, located in the 96382 Units, to third parties and how the proceeds from such sales would be credited to the Judgment owed by plaintiffs to defendants.  Plaintiffs contend that a letter dated 8/28/02, sent by defendants' counsel to plaintiffs' counsel, effectively dissuaded the buyers of the 96832 Units from also buying the accompanying furnishings. Plaintiffs argue further that the letter discouraged the buyers from purchasing the furnishings because they did not want to become entangled in a legal dispute between the plaintiffs and defendants.

Defendants argue that plaintiffs themselves prevented the sale of the furnishings by imposing the additional conditions[4] on the sale of the furnishings and refusing to sign the Bill of

---

[4] The additional conditions required that defendants take the $15,000.00 sale proceeds from escrow and make them payable directly to Bradley T. Goulding.  Moreover, the additional conditions required the buyers to enter into a rental management agreement with plaintiffs' vacation rental company, Neskowin Vacation Rentals, Inc., which the buyers eventually agreed to do.

10 - OPINION AND ORDER

Sale until after those additional conditions were accepted.  Defendants contend that counsel's letter was not an interference with an economic opportunity, but instead an explanation that any conditions imposed beyond those provided in the Agreement were impermissible.

Section 11 sets forth the conditions under which the furnishings were to be sold and how the proceeds therefrom would be applied to the plaintiffs' judgment debt.  Any additional conditions to the sale of the furnishings located in the 96832 Units, imposed by either plaintiffs or defendants, would necessarily violate the terms articulated in the Agreement.  Under the terms expressed in the Agreement, defendants were entitled to inform plaintiffs of this potential breach of the Agreement.

The court finds, however, that genuine issues of material fact exists as to why the buyers decided against purchasing the furnishings.  The parties have submitted conflicting declarations as to why the buyers chose not to purchase the furnishings.  The conflicting submissions raise questions of material fact that make a grant of summary judgment on this claim improper.  Again, however, the court notes that questions remain regarding what damages could have been sustained by plaintiffs as a result of any potential wrongdoing by defendants.  These questions will need to be addressed clearly at trial in order for plaintiffs to prevail on this claim.

### D.    **Breach of the Confidentiality Provision.**

In pertinent part, Section 17 of the Agreement provides:

This agreement and the related documents shall remain confidential to PCIC, its investors and Gouldings, except as required for recordation and filing purposes in the public record.  PCIC shall not voluntarily provide any information to any person, company or agency regarding account no. 96381 or account no. 96382, except as required by law.

Plaintiffs argue that a comment made by defendants' former asset manager, Ms. Westerdahl, violated Section 17.  At the annual meeting of the Neskowin Homeowners

11 - OPINION AND ORDER

Association, on or about March 3, 2002, Ms. Westerdahl stated that "the Units have been taken back in foreclosure."  Plaintiffs contend that this statement was inaccurate insofar as the 96381 properties were deeded back by Bargain and Sale Deed, as opposed to taken back via foreclosure.  Moreover, plaintiffs argue that they have suffered as least nominal damages as a result of Ms. Westerdahl's statement.

Defendants argue that no material breach of the confidentiality provision took place. Defendants contend that certain "96381 Units" were, in fact, taken by foreclosure.  Defendants further argue that there is no practical difference between the remaining units being taken via foreclosure or taken back by deed, in lieu of, foreclosure.  Defendants also contend that, even if Ms. Westerdahl's statements did constitute a breach, plaintiff has not and cannot establish actual damages.

The court finds that Ms. Westerdahl's statement was a violation of the confidentiality provision in Section 17.  Nevertheless, the plaintiffs submit no evidence establishing that they suffered any actual damages as a result of Ms. Westerdahl's comments.  Additionally, plaintiffs' counsel conceded during oral arguments that he knew of no case law which would allow the recovery of nominal damages for this kind of breach.  Therefore, summary judgment for defendants as to the Section 17 breach claim is proper.

**2.**    **Motion to Strike the Declarations of Bradley T. Goulding and Margaret Page.**

Defendants argue that the declarations Bradley Goulding and Margaret Page are insufficient under FRCP 56(e).  Defendants contend further that Goulding's declaration lacks

foundation and is hearsay.  Additionally, defendants argues that Page's declaration does not adequately establish her as an expert in the field of the standard practices of title companies.

The court finds that the declarations of both Bradley Goulding and Margaret Page are permissible under the standards for summary judgment.  Defendants' evidentiary objections raise challenges to the proper weight to be give to these declarations and are not properly addressed at the summary judgment stage.  Therefore, defendants' Motion to Strike the declarations is denied.

## CONCLUSION

Defendants' Motion for Summary Judgment [21] is GRANTED as to the Section 17 "Confidentiality Provision" breach claim and the Section 3 "Interest-Bearing Escrow Account" breach claim.  Defendants' Motion for Summary Judgment as to all other claims is DENIED.

Likewise, Defendants' Motion to Strike the declarations of Bradley T. Goulding and Margaret Page [32] is DENIED.


IT IS SO ORDERED.

Dated this  _2_  day of March, 2006.


                                                        __/s/Ancer L.Haggerty_____
                                                               Ancer L. Haggerty
                                                            United States District Judge

14 - OPINION AND ORDER